ARTHUR DUNN *v.* WILLIAM EVANS AND WIFE AND OTHERS.

One seized of an estate of inheritance dies, leaving neither father, brother, nor sister, nor descendants, but leaving a mother. His estate is cast upon his next of kin of the blood from which the estate came. The mother marries and has a child, the estate passes from the next of kin and vests in such child as heir of the half blood, under the Ohio law of descents.

164

THIS is a suit in chancery, reserved in the county of Belmont. The plaintiff claiming to be the owner in fee of 3185-4116 parts of one hundred and forty-six acres of land, which he holds as ten-ant in common with the defendant, asks partition.

On April 3, 1830, Mariam Penn, owning the premises, conveyed them to Francis Penn, her son and only child, and died soon afterward. On September 6, 1830, Francis Penn died seized of the land, leaving his wife pregnant. James Francis Penn, the posthumous child, was born on January 18, 1831, inherited the lands in fee, subject to the dower of his mother, and died on January 20, 1831. The plaintiff holds the interests in part, of those who, at the death of James Francis Penn, the person last seized, were his nearest of kin, of the blood of Francis Penn, "the ancestor from whom the estate came," and upon whom the estate descended; and upon this title he seeks partition.

It is shown by plea, that after the death of James F. Penn, his mother intermarried with William Evans, to whom, on December 14, 1833, was born a son, Ather Evans; and the partition is resisted on the ground, that the subsequent birth of a brother of James F. Penn, although of the half blood, terminates the estate of those who inherited the land at his death.

*Judge LANE pronounced the opinion of the court:     [170

The fourth clause of the statute of descents of 1824, then in force, 2 Chase's Stat. 1313, sec. 1, preferred the brothers and sisters of the intestate of the half blood to the next of kin to the intestate of the blood of the ancestor, from whom the estate descended, provided such next of kin were more remote from such ancestor than his brothers and sisters, or their representatives. So that in this case, if Ather Evans, the brother in the half blood of James F. Penn, had been living at the time of his death, the land would have descended to him.

And it makes no difference with the right of Ather Evans, that his birth occurred after the death of James F. Penn. Although lands descend to him who is heir at the intestate's death, by the operation of the feudal rule, that the freehold should not be in abeyance, this descent may be defeated at any time, by the birth of a nearer heir. Co. Lit. 2, 6; 3 Cruise's Dig. 230; 3 Wils. 516; 3 Atk. 203. To prevent the supposed evils of a shifting inherit-ance, in a case like this, the Virginia statute of descents requires

from the heir the capacity of taking at the intestate's death. Tucker's Blackstone, 1803, 2 Appendix, 12.

The plaintiff, in argument, claims the profits of the land, in the interval between the death of James F. Penn, and the birth of Ather Evans. His right to such profits seems well grounded, 5 Co. Lit. 11, 6, n. 4, and cases cited; but his bill is not adapted to such relief. His purchases of the land were at various times, some before and some after the birth of the present owner, and the plaintiff acquired no interest in them until his purchases. The settlement of these claims will require the taking of a very complicated account, to which all parties in interest must be made parties, and an entire new frame of bill is necessary for this purpose.

Bill dismissed, reserving all right to account, either in law or equity.